UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRINA KONSTANTINOV, as Conservator
for the Estate of VLADIMIR
KONSTANTINOV, a mentally
incapacitated person, and
SERGEI MNATSAKANOV,

        Plaintiffs,

vs.

Case No. 04-CV-74928

HON. GEORGE CARAM STEEH

FINDLAY FORD LINCOLN MERCURY,

        Defendant.
_____/

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Defendant Findlay Ford Lincoln Mercury ("Findlay Ford") is an automobile dealership with its principal place of business in Ohio. (Stanley J. Kujawa Dep. at 5.) In addition to being a regular Ford dealership, for five years Findlay Ford was in the business of selling limousines, until they withdrew from that business in 1997. (Id. at 19.) During that time they sold approximately two to three thousand limousines. (Id.) To fill an order for a limousine, Findlay Ford would first purchase a Lincoln Town Car from Ford. (Bradley C. Redman Dep. at 31.) Next, the title of the car was transferred to National Coach, a separate company in the business of converting automobiles into limousines, which would make the necessary modifications, including stretching the car and redoing the interior. (Id.) National Coach, while not in an exclusive agreement with Findlay Ford, did most of the modifications for the dealership. (Id. at 34.) National

Coach was certified by Ford as a Qualified Vehicle Modifier ("QVM"). Finally, after modification, the limo would be transferred back to Findlay Ford for delivery to the customer. (Id. at 32-33.)

In 1995, Findlay Ford sold a limousine to Gambino's Westside Limousine Service, Inc. ("Gambino's"), a Michigan corporation. (Amended Compl. at ¶ 9.) On June 13, 1997, plaintiffs Vladimir Konstantinov and Sergei Mnatsakanov were passengers in that limousine. (Id. at ¶ 5.) Plaintiffs were seriously injured when the driver of the limousine, Richard Gnida, lost control of the limousine and struck a tree on Woodward Avenue in the City of Birmingham, Michigan. (Id. at ¶ 6-7.)

Plaintiffs are suing Findlay Ford under a claim that the limousine was negligently designed, and that the design defects proximately caused their injuries when the limousine was involved in an accident. Specifically, the defects that Plaintiffs allege are that: 1) the seatbelt buckles in the limousine lacked stalks that would have prevented the buckles from becoming tucked into the seats, and thus inaccessible; 2) the partition of the limousine separating the driver and passenger compartments was not energy absorbing; and 3) the passenger compartment did not have three-point seatbelts.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56© empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56© that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248,

252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

### 1. Pleading of Implied Warranty of Merchantability

Plaintiffs, in their Response to Defendant Findlay Ford's Motion for Summary Judgment, present arguments supporting a claim for breach of the implied warranty of merchantability. Defendant Findlay Ford, in their Reply Brief, argues that Plaintiffs first asserted breach of implied warranty of merchantability in their Response, never specifically mentioning it in their Amended Complaint. Plaintiffs respond in their Supplemental Brief that even if they did not name the implied warranty theory in their complaint, they asserted the elements of such a claim, and, in the alternative, ask for leave to amend their complaint.

Under the Federal Rules of Civil Procedure, the substance of a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Furthermore, "all pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f). Likewise, leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

These rules are construed liberally for plaintiffs. In one case, a complaint was deemed sufficient to plead a certain legal theory, without ever specifically mentioning that theory, when "[a]ll the necessary averments were present in the complaint to bring [that] claim". Ritchie v. United Mine Workers of America, 410 F.2d 827, 832 (6th Cir. 1969). In Ritchie, the plaintiff had alleged one legal theory that would have barred the claim under the statute of limitations, but the court found that the complaint was

4

sufficient to present a claim under a different legal theory with a longer statutory period. Id.  In another case along the same vein, the plaintiff raised a new claim in its motion for summary judgment, fourteen months into the case and three weeks before trial. U.S. v. Wood, 877 F.2d 453, 456 (6th Cir. 1989).  The district court allowed the amendment, granting both parties more time to supplement their summary judgment briefs. Id.  On appeal, the Sixth Circuit held that, as the defendant could not show how she had been prejudiced, the district court had not abused its discretion. Id.  Types of prejudice include: insufficient time to conduct discovery regarding the new claim, unfair surprise, or insufficient time for the defendant to conform its pleadings to the new theory. Id. at 456-57.

Similar to Ritchie, while Plaintiffs did not name breach of implied warranty of merchantability in their Amended Complaint, they did plead the elements.  The elements that establish a breach of an implied warranty are: "(1) that the retailer sold the product in a defective condition and (2) the defect caused the plaintiff's injury." Siedlik, 205 F. Supp. 2d at 764.  In their Amended Complaint, Plaintiffs aver that Findlay Ford sold the limousine, that the safety features of the limousine were defective, and that as a consequence of those defects Plaintiffs suffered their injuries. (Amended Compl. ¶¶ 8, 10, 12.)  Furthermore, other than non-specific assertions, Findlay Ford has not shown how it would be prejudiced by allowing a claim of breach of implied warranty of merchantability to go forward.  Thus, plaintiffs are permitted to pursue a claim of breach of implied warranty of merchantability.

**2. <u>Non-manufacturing Seller</u>**

To establish a product liability claim, Plaintiffs must show that Findlay Ford, a non-manufacturing seller of the limousine, was either independently negligent or that there was a breach of an implied warranty. In Michigan, MCL § 600.2947 (6)(a), a statute arising out of the tort reform legislation of 1996, governs the liability of non-manufacturing sellers in product liability actions. <u>Adams v. Meijer, Inc.</u>, 2001 Mich. App. LEXIS 298. In pertinent part, the statute states:

> (6) In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless . . . the following is true:
>
> > (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries . . .

MCL § 600.2947 (6)(a). While the construction of the statute indicates that implied warranty claims are a subset of claims involving a failure to exercise reasonable care, courts have interpreted these as distinct causes of action. <u>Hollister v. Dayton Hudson Corp.</u>, 201 F.3d 731, 737 (6th Cir. 2000); <u>Fire Insurance Exchange v. Electrolux Home Products</u>, 2006 WL 2925286 (E.D. Mich. 2006) (J. Hood); <u>Torno v. 2SI, LLC</u>, 2006 WL 1284926 (E.D. Mich. 2006) (J. Roberts); <u>Williams v. KIA Motors America, Inc.</u>, 2005 WL 2649152 (E.D. Mich. 2005) (J. Battani); <u>Siedlik v. The Stanley Works</u>, 205 F.Supp.2d 762, 764 (E.D. Mich. 2002) (J. Gadola); <u>Mills v. Curioni, Inc.</u>, 238 F. Supp. 2d 876, 886 (E.D. Mich. 2002) (J. Rosen). Under the "reasonable care" aspect of the statute, a seller is liable in tort only for their independent negligence. <u>Id.</u> This in turn requires showing that the seller knew or had reason to know that the product was defective. <u>Id.</u> However, the "implied warranty" aspect does not require a showing of fault on the part of the

6

seller. Siedlik, 205 F. Supp. 2d at 764-65. Instead, the elements that establish a breach of an implied warranty are only: "(1) that the retailer sold the product in a defective condition and (2) the defect caused the plaintiff's injury." Id. at 764.

In Siedlik, the plaintiff, an auto worker, was injured while working with a die cart, and subsequently sued the manufacturer of the die cart alleging that the carts were negligently designed. Id. at 763. The court allowed the plaintiff to join the seller of the die carts to the suit under the theory of breach of implied warranty of merchantability. Id. at 764. Similarly, in Hollister, the Sixth Circuit, overturning a district court decision, allowed a woman, who had been severely burned when her shirt caught fire, to proceed with her suit against the non-manufacturing retailer who had sold her the shirt. Hollister, 201 F.3d at 734, 736-37. In particular, the court held that while there was no evidence of independent negligence on the part of the retailer, the suit could proceed under the theory of breach of implied warranties. Id. at 736-37.

Thus, even in the absence of independent negligence, Findlay Ford can still be held liable for a breach of an implied warranty if the limousine was defectively designed.

### 3. Disclaimers of Implied Warranties

Findlay Ford claims that it is not liable for breach of an implied warranty as the sales agreement for the limousine included a disclaimer of all implied warranties. However, under Michigan common law, the implied warranty of merchantability, as it pertains to product liability and personal injury, cannot be disclaimed. While there is some confusion in the terminology, the UCC and the common law provide distinct causes of action for breach of implied warranties. Bevard v. Ajax Mfg. Co., 473 F.Supp. 35, 37 (E.D. Mich. 1979). Indeed, "there are three potential theories of recovery in

Michigan when someone sustains **personal injury** by means of a defective product: (1) [UCC] warranty remedies; (2) 'common law warranty' remedies; (3) negligence." Id. (emphasis in original).  This common law implied warranty provides broader protection for consumers than the UCC.  Blanchard v. Monical Mach. Co., 84 Mich. App. 279, 284, 269 N.W.2d 564, 567 (Mich. App. 1978).  It extends liability of manufacturers and retailers to consumers regardless of privity of contract or attempts to disclaim liability. Id.

One court, citing to Blanchard, held that the company that purchased, imported, and sold a printing press was liable under the common law implied warranty to a person injured while using the press.  Inman v. Heidelberg E., Inc., 917 F. Supp. 1154, 1156, 1162 (E.D. Mich. 1996).  Even though the press had been sold numerous times since it was initially imported, and the importer had sold the press "as is," the importer was liable because it could not disclaim the common law implied warranty.  Id., see also Wessels v. E.W. Bliss, 180 Mich. App. 440, 445 (1989); Kueppers v. Chrysler corp., 108 Mich. App. 192, 211 (1981) ("Common law tort liability in Michigan is distinct from the warranty liabilities imposed by the Uniform Commercial Code, and may not be abrogated by the disclaimers permitted under the code." (citing Blanchard)).

Thus, because common law implied warranties may not be disclaimed, even if Findlay Ford attempted to disclaim implied warranties on its sales agreement with Gambino's, it may still be held liable to Plaintiffs.

### 4. Negligence Claims

Plaintiffs have also brought claims stating that Findlay Ford was negligent and grossly negligent in supplying, designing, assembling, or selling the limousine. (Amended Compl. ¶ 9.) Under Michigan law, a seller is only liable for their independent negligence if they knew or had reason to know that the product was defective. Mills, 238 F. Supp. 2d at 886. Plaintiffs have presented very little evidence to establish that Findlay Ford was independently negligent. For example, while Plaintiffs have presented deposition testimony that Findlay Ford knew that the seatbelts did not have stalks, they have not presented evidence showing that Findlay Ford knew this was a defect, such as that it was the standard in the industry at the time to install seatbelt stalks. However, as there is still time left for discovery, it remains an open question as to whether Plaintiffs will be able to present more evidence of negligence.

### CONCLUSION

For the reasons given above, defendant's motion for summary judgment is DENIED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  November 14, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on November 14, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk