UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRINA KONSTANTINOV, as Conservator For the Estate of VLADIMIR KONSTANTINOV, a mentally incapacitated person, and SERGEI MNATSAKANOV,

Plaintiffs,

v.

FINDLAY FORD LINCOLN MERCURY,

Defendant.
_______________________________/

CIVIL ACTION NO. 04-74928

DISTRICT JUDGE GEORGE CARAM STEEH

MAGISTRATE JUDGE VIRGINIA MORGAN

**OPINION AND ORDER DENYING PLAINTIFFS' EMERGENCY MOTION FOR SANCTIONS FOR MAKING BAD FAITH OBJECTIONS TO SUBPOENAS**

This matter is before the court on plaintiffs' Motion to Compel Ford Motor Company to Produce Subpoenaed Witnesses for Deposition and Subpoenaed Documents and For Sanctions for Making Bad Faith Objections to Subpoenas filed February 13, 2008 (D/E 114). The motion was heard on an emergency basis on plaintiffs' request and the request for sanctions was denied as frivolous. This opinion further explains the reasons for the court's decision. In sum, the court finds that Ford has produced documents and cooperated in discovery. Plaintiffs' requests were overly broad. Plaintiffs' citations to the court of other cases where Ford's conduct has been criticized are not persuasive. In this case, both Ford and the conduct of its counsel have been appropriate and professional.

This case arises out of a limousine accident on June 13, 1997. Defendant Findlay Ford Lincoln Mercury is the Ford dealership which in 1995 sold the limousine involved to Gambino Westside Limousine Service, Inc., a Michigan corporation. Plaintiffs sue defendant Findlay Ford for negligence and gross negligence. Plaintiffs contend that the limousine was negligently designed and that the design defects proximately caused their injuries. (D/E 105 at 2) Plaintiffs also alleged an implied warranty claim against defendant, the non-manufacturing seller.

National Coach Engineering purchased from Findlay Ford a 1995 Lincoln Town Car manufactured by Ford Motor Company. National Coach then modified the vehicle, converting it to a limousine for Gambino Limousine Service. On the night in question, Mr. Konstantinov and Mr. Mnatsakanov were passengers in this limousine operated by Richard Gnida and owned by Gambino's. They were not wearing their seat belts. While driving, Mr. Gnida apparently fell asleep, lost control of the limousine, crossed several lanes of traffic, and struck a tree on Woodward Avenue in the City of Birmingham, Michigan, seriously injuring the plaintiffs. Sometime later, in approximately 2001, plaintiffs settled with Ford Motor Company. Plaintiffs and Ford entered into a settlement under which Ford Motor Company paid money to plaintiffs and plaintiffs agreed to release Ford Motor Company and all of its affiliated and related companies, corporations and divisions, and all of its directors, stockholders, partners, agents, servants, representatives, attorneys, employees, predecessors, successors, subrogees and assigns. In 2004, plaintiffs sued Findlay Ford, a Ford Motor Company dealership. Defendant filed a Notice of Non-Party Fault (D/E 5) alleging that both Gambino Limousine and Mr. Gnida were wholly or partially at fault because Gambino owned, controlled, and had possession of the

vehicle and was responsible for making sure the seat belts in the vehicle were accessible to plaintiffs, and, in addition, because it allowed Richard Gnida to operate the vehicle on a suspended license with marijuana in his system. It is apparently undisputed that at the time of the incident, Gnida had no valid driver's license and the owner of the limousine company John Gambino knew this but permitted him to drive the vehicle.

Further, it should be noted that Findlay Ford did not design, manufacture, modify or crash test the limousine. It purchased a new Lincoln town Car which was sold it to National Coach, a separate company in the business of converting automobiles into limousines. (Opinion on Defendant's Motion for Summary Judgment, D/E 105 pp 1-2). National Coach was certified by Ford as a Qualified Vehicle Modifier (QVM). It modified this vehicle with the options that Gambino selected. "National Coach sold the limousine back to Findlay Ford, which in turn sold it to Gambino. All modifications were made by National Coach, and Findlay Ford did not alter or modify it prior to selling it to Gambino, and specifically, Findlay Ford did not install or modify the limousine prior to selling it to Gambino's." *Id*. at 2. National Coach modified the seat belts to install lap belts, replaced the original belts with non-original equipment, and used 1992 seat belts (at least for the passengers), according to expert testimony. National Coach is apparently out of business and/or without assets.

In ruling on defendant's motion for summary judgment, the district judge found that, under Michigan's tort reform laws, "non-manufacturing sellers can be held liable for breach of implied warranty only if it is shown that they failed to exercise reasonable care, that is, if they knew or had reason to know of the alleged defect." (D/E 104 at 9) Plaintiffs argued in support

of its claims for defendant's negligence that the seat belts should have included "stalks." The report of defendant's expert states that such plastic stiffeners were indeed part of the original 1995 Town Car design but that they were not present on the limousine when it was inspected after the accident. There was also evidence to indicate that such stalks are not standard for limousines. (D/E 104 at 11, 12) Plaintiffs also argued that it was grossly negligent for the dealership to rely on National Coach to design and manufacture a safe limousine. The court permitted plaintiffs to go forward with these claims on the grounds that material facts remain in dispute, but limited plaintiffs proofs at trial only to evidence having a connection to the issue of seat belts and Findlay Ford's knowledge thereof. (D/E 104 at 12)

*The Discovery Requests*

The case proceeded through discovery with documents and depositions from Findlay Ford employees, other witnesses, and various experts. Late in the case, plaintiffs sought various documents and depositions from Ford Motor Company and Ford Motor Credit. In January, 2008, plaintiffs served a Re-Notice of Taking Duces Tecum Deposition for the person employed by nonparty Ford Motor Credit regarding audits of Findlay Ford Lincoln Mercury, National Coach Engineering, and/or National Coach Distributors relating to the years 1989 through 1997. These requests included information on the audits, chain of custody, and whereabout of vehicles covered under the floor plan financing. In its motion for a protective order, Ford Motor Credit correctly pointed out that this is product liability action grounded in negligence and no claims for punitive damages have been asserted or are recoverable. The case is limited to the issue of seat belts and Findlay Ford's knowledge relevant to this issue. Thus, it appears that the finance

information is not relevant. Federal Rule of Civil Procedure Rule 26 requires that the requested discovery must be limited to matters relevant to the claim or defense of a party. Courts are directed to focus on the specific claim or defense alleged in the pleadings. (Advisory Committee notes, 2000 Amendments). Because on January 28, 2008, the district judge entered an order on defendant's motion for summary judgment, limiting plaintiffs' claims to those as described above, plaintiffs' request is clearly over broad and the persistence of the request does not comport with the standards of Rule 26. Despite the district judge's limitations, plaintiffs continued to demand a wide variety of documents, which would be not relevant to matters at issue and would not be reasonably calculated to lead to the discovery of admissible evidence. Ford had produced documents and provided information for plaintiffs to obtain additional materials that were accessible in the public domain. In addition, Ford agreed to produce a Rule 30(b)(6) deponent on seat belt packaging and similar issues, and it offered two dates in response to the arbitrary date selected by plaintiff's counsel. Plaintiff's counsel apparently made no contact with Ford's counsel prior to the subpoena in an effort to describe the parameters of the request or to agree upon a mutually convenient date. (D/E 114, ex. 5) In addition, in an apparent effort to poison the well, plaintiffs cited in the brief several cases castigating Ford Motor Company and the law firm Bowman and Brooke for discovery abuses. This is equivalent to the "bad man theory," inviting the court to find guilt based on past conduct and judicial conclusions in other cases without examining the facts and circumstances before it. This court is unwilling to do that. In this case, the conduct of Ford, Ford Credit, and Bowman & Brooke with respect to the discovery requested appears to the court to be appropriate, professional, and

consistent with the Federal Rules of Civil Procedure. Ford has produced documents and provided deponents, and Bowman & Brooke have filed appropriate objections consistent with their obligation to represent their client.

The court further notes that, in this case, many of the requests filed by plaintiffs seem to be last minute efforts to demonstrate a vague conspiracy between National Coach and Findlay Ford, or Findlay Ford and Ford Motor Company. Having identified those persons and entities clearly at fault–the driver, the limousine company, and others; having reached negotiated settlements with apparently all parties with funds; and having discovered that certain entities like National Coach who may have direct liability do not have sufficient assets from which to seek recovery, plaintiffs look elsewhere. They have not obtained the kind of discovery responses they hoped for and have now predicated Findlay Ford's liability on more tenuous theories, with attempts to infer some kind of liability emanating from Findlay Ford's association with Ford Motor Company. The district judge limited the issues at trial to those related to seat belts and the manner of banding them with rubber bands. The documents requested have nothing to do with the issues remaining in the case. The Rule 30(b)(6) deponent was made available in a timely fashion for plaintiff's questioning. While the court is very sympathetic to the plaintiffs, as they have, indeed, received life changing injuries through no fault of their own, it does not follow that plaintiffs are absolutely entitled to take whatever discovery they choose, regardless of breadth or relevance, and that objections to overly broad requests or those not likely to lead to admissible evidence are sanctionable.

The court is particularly concerned in this case in light of the terms of the settlement in 2001 that plaintiffs entered into with Ford which clearly released it from liability. The discovery requested appears to be an effort to discovery documents bearing on Ford's liability. If so, that would undermine the previous agreement of the parties by seeking to place some kind of additional responsibility on Ford, alone or in combination with Findlay Ford. It could also be seen as a method to harass and cause Ford to incur additional expenses. Plaintiffs have agreed in the 2001 settlement to indemnify Ford for claims of liability, as well as expenses and other relief, with respect to enforcing a claim for damages with respect to the accident. It is unclear what purpose the requested discovery serves in light of the previous settlement.

For whatever reason the discovery was requested, the court finds that the conduct of Ford and its counsel Bowman & Brooke is not sanctionable and IT IS ORDERED that the request for the same IS DENIED. Because of the time and expense already spent on this issue by both sides and by the court, the court will not entertain a Rule 11 motion from Ford or its counsel in an effort to move this case forward toward the trial which is imminent.

So Ordered.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: April 1, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 1, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan